FILED

11/29/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0191

DA 16-0191

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 312N

ARLAN WIGGINS,

      Plaintiff and Appellant,

    v.

RESIDENTIAL CREDIT SOLUTIONS,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV-13-277
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michael Klinkhammer, Klinkhammer Law Offices, Kalispell, Montana

      For Appellee:

          Erika R. Peterman, RCO Legal, P.S., Missoula, Montana

Submitted on Briefs:  October 26, 2016

Decided:  November 29, 2016

Filed:

                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Arlan Wiggins (Wiggins) appeals from the order of the Twentieth Judicial District Court, Lake County, granting Residential Credit Solution's (RCS) motion for summary judgement. We affirm.

¶3 On July 10, 2007, Wiggins obtained a loan in the amount of $595,000 from Fairway Independent Mortgage Corporation (Fairway), executing a Note and Deed of Trust and encumbering the property currently known as 28302 Cougar Trail in Bigfork, Montana. On July 16, 2007, the Deed of Trust was recorded in Lake County, Montana, conveying the property to a trustee and naming Fairway as the lender and Mortgage Electronic Registration Systems, Inc. (MERS) as the sole nominee for Fairway and its successor and assigns.

¶4 On December 19, 2008, MERS assigned the Deed of Trust to Amtrust Bank (Amtrust) and recorded the assignment in Lake County, Montana, on January 2, 2009. Wiggins had previously executed a Notice of Assignment, Sale or Transfers of Servicing Rights, acknowledging the transfer of his loan to Amtrust, on July 10, 2007. On April 22, 2009, Wiggins, Amtrust, and MERS entered into a Loan Modification Agreement

2

which amended and supplemented the Deed of Trust, and provided a new unpaid principal balance of $645,221 on the loan. On December 4, 2009, Amtrust was closed and the Federal Deposit Insurance Corporation (FDIC) was appointed as Receiver and charged with winding up Amtrust. On July 14, 2010, FDIC sent a letter to Wiggins, advising him that the servicing of the loan had been transferred to RCS and that Wiggins should begin making payments to RCS after August 1, 2010. On July 23, 2010, RCS also sent a letter to Wiggins, informing him that RCS would be servicing his loan.

¶5 Wiggins subsequently filed for Chapter 13 bankruptcy and the U.S. Bankruptcy Court for the District of Montana approved a Stipulation and Agreement (Stipulation) on November 7, 2011. In the Stipulation, Wiggins acknowledged that he was in default in the amount of $7,984.43 under the loan obligation due RCS and agreed, among other things, that he would cure the arrearages for post-petition fees and costs and make regular monthly payments to RCS. The Stipulation also provided that, upon default, RCS was immediately entitled to seek foreclosure and liquidate the property. Wiggins failed to comply with the terms of the Stipulation and, on April 5, 2012, RCS filed a notice of non-compliance with the Bankruptcy Court, advising Wiggins that RCS was proceeding with a foreclosure action.

¶6 In April of 2012, the loan was referred to Northwest Trustee Services, Incorporated (Northwest), an agent of First American Title Insurance Company (First American). Northwest initially scheduled a trustee sale for October 30, 2012, but cancelled the sale due to its failure to give proper notice of the sale. Northwest then discovered an error in the chain of title, specifically in the assignment, which listed

3

MERS as nominee for John Adams Mortgage Company (instead of Fairway) and assigned the Deed of Trust to Amtrust. Northwest corrected the error by filing and recording a new Assignment of Deed of Trust on February 26, 2013. RCS then filed an Appointment of Successor Trustee on April 1, 2013, appointing First American as successor trustee under the trust deed.

¶7 Northwest sent Wiggins a Notice of Trustee's Sale, scheduling a new trustee sale for September 5, 2013. The notice was sent to several addresses, including the property's current address of 28302 Cougar Trail in Bigfork, Montana. The notice was also posted at the property address and published for three consecutive weeks in a local newspaper. The trustee sale was held on September 6, 2013. RCS was the highest bidder at the sale with a credit bid of $600,000. The Trustee's Deed was recorded on September 12, 2013.

¶8 On November 1, 2013, Wiggins filed an Interim Motion to Set Aside Trust Sale and, after failing to properly serve RCS, filed a complaint on January 7, 2014, asking the court to move forward with his motion. The court granted Wiggins' motion on February 21, 2014, basing its order on RCS's failure to answer Wiggins' complaint. On August 1, 2014, the court vacated the order after discovering numerous procedural deficiencies related to Wiggins' motion and complaint. On December 12, 2014, Wiggins filed an amended complaint, but again failed to properly serve RCS. After RCS became aware of the amended complaint and filed its answer, Wiggins filed, and the court denied, his Motion for Entry of Default.

¶9 On September 21, 2015, RCS filed a Motion for Summary Judgment, arguing that: 1) RCS was the holder of the Note and recorded beneficiary of the Deed of Trust;

2) Wiggins received proper notice of the foreclosure sale; and 3) Wiggins was given the opportunity, but failed, to cure the default and remain in possession of the property pursuant to § 71-1-312, MCA. On October 9, 2015, Wiggins filed an Answer to Summary Judgment, contending that RCS had no standing to foreclose on the property because the loan documentation had been procured by fraud. On November 12, 2015, the District Court granted RCS's Motion for Summary Judgment, finding that Wiggins had not presented a single genuine issue of material fact. The court based its rationale on the undisputed fact that Wiggins had failed to make payments on the loan or cure the default. The court acknowledged, but did not find material, both Wiggins' belief that the documents "have or should have different numbers," and the fact that the title contained mistakes which were corrected in order to clear the title.

¶10 On November 18, 2015, Wiggins filed a Motion to Set Aside Summary Judgment, arguing that the redaction of loan numbers by RCS's law firm constituted fraud. He also accused RCS of forgery, falsification, and other criminal activity. RCS responded to Wiggins' accusations with an affidavit of the firm's paralegal, stating that the redactions were made in order to comply with federal law.[1] The District Court denied Wiggins' motion and entered its final judgment in favor of RCS on February 11, 2016. Wiggins filed a timely appeal.

---

[1] The Gramm-Leach-Bliley Act, 15 USC § 6801 (2012), requires financial institutions to protect the security and confidentiality of their customer's nonpublic personal information. Federal regulations interpreting the statute state that "[n]onpublic personal information includes any list of individuals' names and street addresses that is derived in whole or in part using personally identifiable financial information (that is not publicly available), such as account numbers." 16 C.F.R. 313.3(n)(3)(i) (2000).

¶11 We review a district court's grant of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9. Under Rule 56(c), summary judgment will be granted if the moving party can show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200.

¶12 Wiggins appeals the District Court's ruling in favor of RCS as it applies to his claims that the RCS loan documents are fraudulent. He also argues for the first time on appeal that redactions made to the loan documents rendered them inadmissible under M. R. Evid. 902(8). It is undisputed that Wiggins received a loan for a house and subsequently failed to make payments on the loan. Indeed, in his amended complaint, Wiggins stated that he "owes someone on my mortgage, but it's not RCS." We note that this statement is inconsistent with the bankruptcy Stipulation, wherein Wiggins specifically acknowledged RCS as his creditor and agreed to make regular monthly payments to RCS. Nonetheless, Wiggins claims that RCS had no legal right to foreclose on the property because the loan documents do not properly reflect to whom he owes money. The District Court determined that the steps RCS took to comply with federal law and correct the title after Wiggins failed to meet his loan obligation did not create a genuine issue of material fact. We agree.

¶13 Addressing Wiggins' claim that RCS committed fraud when it redacted loan numbers and corrected the chain of title by filing and recording a new Assignment of Deed of Trust, we conclude that the District Court was not required to address the fraud allegation because Wiggins did not plead fraud in his original or amended complaint. Under M. R. Civ. P. 9(b), a party alleging fraud must plead the circumstances constituting fraud with particularity. *Fossen v. Fossen*, 2013 MT 299, ¶ 9, 372 Mont. 175, 311 P.3d 743. To sustain a fraud claim, one must plead and prove the following nine elements of fraud:

> (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation, or ignorance of its truth; (5) speaker's intent that it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury was caused by reliance on the representation.

*Fossen*, ¶ 9 (quoting *Krone v. McCann*, 197 Mont. 380, 387, 642 P.2d 584, 587-88 (1982)). A pleading is sufficient when it "gives adequate notice to an adverse party enabling it to prepare a responsive pleading." *Fossen*, ¶ 9.

¶14 In this case, Wiggins did not plead fraud with sufficient particularity to give RCS adequate notice of his claim. In his amended complaint, Wiggins simply claimed that the "assignments of deed of trust were fabricated" such that he could not sell the home because "a clean chain of title was taken from me." However, such bare assertions are insufficient for us to conclude that he has alleged the facts and circumstances constituting fraud with particularity. His allegations are too indefinite and stated so generally that we cannot determine which acts comprise the nine elements of fraud. While a court may

7

give pro se litigants a certain amount of latitude with respect to procedural oversights, "that latitude cannot be so wide as to prejudice the other party, and it is reasonable to expect all litigants, including those acting pro se, to adhere to procedural rules." *Sun Mountain Sports, Inc. v. Gore*, 2004 MT 56, ¶ 28, 320 Mont. 196, 85 P.3d 1286 (quoting *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124). It is the plaintiff's burden to plead a cause of action adequately and Wiggins did not do so in this case. *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 42, 337 Mont. 1, 155 P.3d 1247. As such, we conclude that the District Court did not err in granting summary judgment to RCS.

¶15 Additionally, for the first time on appeal, Wiggins attempts to argue that the District Court erred in relying on redacted loan documents because the documents do not qualify as self-authenticating evidence under M. R. Evid. 902(8). However, "[i]t is well established that this Court will not review an issue that was not raised in the district court." *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 37, 321 Mont. 364, 91 P.3d 569. Accordingly, we decline to address the merits of Wiggins' evidentiary argument on appeal.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous and its interpretation and application of the law was correct.

¶17 Affirmed.

8

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE